## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOB KRIST,** | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 16-6178** |
| | : | |
| **PEARSON EDUCATION, INC.,** | : | |
| **Defendant.** | : | |

**McHUGH, J.**                                                                      **DECEMBER 2, 2019**

### MEMORANDUM

This is an action for copyright infringement. Plaintiff Bob Krist is a professional photographer who licenses the use of his photographs through an agency, Corbis, under agreements allowing Corbis to sublicense those photographs to third parties. Pearson Education, Inc. is a long-time Corbis customer, and is one of the third-parties to whom Corbis has sublicensed Krist's work. Krist contends that Pearson made use of the photographs at issue here in ways that exceeded the scope of its agreements with Corbis.

Krist filed suit against Pearson for one count of copyright infringement embracing 359 separate claims. Of the 359 claims Krist asserts, 352 of them arise from the licenses granted to Pearson through Corbis. The remaining seven claims involve licenses Krist issued directly to Pearson.

The parties now each move for summary judgment. For the reasons that follow, I will deny summary judgment to both parties. Rather than provide a detailed recitation of the facts involved at the outset, I will instead address the facts relevant to each issue below.

## I. STANDARD OF REVIEW

### A. Summary Judgment Motions

The parties' Motions are governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317, 322-23 (1986). That standard does not change when the parties cross-move for summary judgment. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). When both parties move for summary judgment, "'[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting 10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2720 (3d ed. 2016)).

### B. Copyright Infringement

Preliminarily, it is necessary to address the controlling standard because the parties appear to dispute it. To establish copyright infringement, a plaintiff must prove by a preponderance of the evidence: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 548 (1985)); *see also Whelan Assocs. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231 (3d Cir. 1986). A valid license is a defense to a claim of copyright infringement. *MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778-79 (3d Cir. 1991).

Pearson cites the Third Circuit's decision in *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005) for the proposition that under the second element of the infringement analysis, a plaintiff must prove that the defendant's copying was "unauthorized." Def. Mot. for Summ. J., ECF 59-1, at 21. But the Third Circuit recently repudiated this formulation. *See In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 66 (3d Cir. 2018).

Of particular note here, the Third Circuit observed that the inclusion of the word "unauthorized" was at odds with the Supreme Court's explication of the elements in *Feist*. *Id.* Bearing the Third Circuit's analysis in mind, I employ the Supreme Court's formula as expressed in *Feist* to decide the dispute between the parties here, leaving Pearson to assert that it was authorized to use the works as an affirmative defense.[1]

## II. DISCUSSION

### A. Pearson's Motion for Summary Judgment

Pearson's Motion raises four grounds on which it seeks summary judgment. First, it argues Krist's claims are barred by the Copyright Act's three-year statute of limitations, and that the "discovery rule" fails to save them, because Krist discussed his claims with an attorney more than three years before filing suit. Second, Pearson contends Krist abandoned or waived more than half of his claims when he failed to include them in a discovery response and then ratified that abandonment during his deposition testimony. Third, Pearson asserts that Krist has sought the incorrect remedy by filing an action for copyright infringement when in fact his claims sound in breach of contract. Finally, Pearson contends that twenty-one of the claims are barred because the underlying registrations are invalid.

#### 1. Statute of Limitations

The Copyright Act provides that "[n]o civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A copyright claim accrues "at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with

---

[1] Judge Rufe of our Court recently considered this issue, and she also concluded that *Feist* controls. *Krist v. Scholastic, Inc.*, 2019 WL 6133861, at *10-11 (E.D. Pa., Nov. 18, 2019).

3

knowledge of all the facts could get it past a motion to dismiss for failure to state a claim."

*William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011) (*Graham II*); *see also*

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014) ("A claim ordinarily accrues

'when [a] plaintiff has a complete and present cause of action.'" (internal citation omitted)).

Thus, if Krist's claim accrued more than three years before he brought suit, as Pearson contends,

it would be barred by the statute of limitations.

The controlling question is when the three-year period started to run.  That is because

nine courts of appeals, including the Third Circuit, have adopted "a 'discovery rule,' which starts

the limitations period when 'the plaintiff discovers, or with due diligence should have

discovered, the injury that forms the basis for the claim.'"  *Petrella*, 572 U.S. at 671 n.4 (2014)

(citing and quoting *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009)

(*Graham I*)). [2]  A court's first step in applying the discovery rule is to determine when the act

constituting the alleged injury actually occurred.  *Graham I*, 568 F.3d at 438.  Next, the court

must ascertain whether that injury could have been discovered immediately or whether the

statute of limitations must be tolled until the time that it reasonably could have been discovered.

*Id*.

In evaluating whether Krist's injury could have been discovered, the initial inquiry is

whether Krist "should have known of the basis for [his] claims," and that, in turn, requires me to

determine when Krist "had sufficient information of possible wrongdoing [to be placed] on

inquiry notice or to excite storm warnings of culpable activity."  *Id*. (citing *Benak ex rel. Alliance*

*Premier Growth Fund v. Alliance Capital Mgmt. L.P.*, 435 F.3d 396, 400 (3d Cir. 2006))

---

[2] For clarity's sake, I refer to the Third Circuit's two opinions addressing the discovery rule as "*Graham I*" and "*Graham II*" to distinguish them from each other and from the Second Circuit's decision in *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), discussed *infra*.  I will refer to the Second Circuit's opinion as "*Graham*."

(internal quotation marks omitted).  Pearson bears the initial burden to show the presence of storm warnings; if Pearson succeeds, the burden shifts to Krist to show that despite the exercise of reasonable diligence, he was unable to discover the injury.  *Id*. (citing *Mathews v. Kidder, Peabody & Co.*, 260 F.3d 239, 252 (3d Cir. 2001)).

The parties do not dispute that the claims asserted here arose more than three years before Krist filed suit.  Thus, as *Graham I* requires, I turn to the question of Krist's ability to discover his injury.  To do so, I must first examine whether Pearson has put forward evidence to show Krist "had sufficient information of possible wrongdoing [to be placed] on inquiry notice or to excite storm warnings of culpable activity."  *Graham I*, 568 F.3d at 438.

This suit was filed on November 23, 2016.  Ordinarily therefore, any of Krist's claims that accrued before November 23, 2013 would be barred by the statute of limitations.  To support its statute defense, Pearson cites two meetings between Krist and his attorney, Maurice Harmon, that took place on November 14, 2013 and November 22, 2013 respectively, as well as email communications between Krist and Harmon about the same matter.  ECF 59-1, at 12-13 (citing Def. Ex. 2 to Decl. of Karl Schweitzer, ECF 59-5).  Pearson also points me to Krist's deposition testimony that he was aware Pearson had a "track record" of infringement.  Krist Dep. Tr., at 76:1-77:14; 113:13-114:15; 320:12-321:22.  Krist further testified in his deposition that Harmon informed him that Krist's "name kept coming up" in searches Harmon conducted and that Krist might have "a goodly number of infringements[.]"  *Id*. at 257:10-17.  Pearson would therefore have me find that the statute of limitations began to run on November 23, 2013, the day after Krist's second conversation with Harmon.

In considering Pearson's argument, I must bear in mind the Third Circuit's admonition that "inquiry notice demands more than evidence that a person is a bad actor in some general sense before a court can conclude that a storm warning exists as to a specific cause of action." *Graham I*, 568 F.3d at 440. The context here has significance. The initial meetings between Krist and Harmon took place at Harmon's instigation, which a reasonable jury could conclude was Harmon essentially marketing his services as a copyright lawyer. Krist Dep. Tr., at 76:16-22; 82:8-9. Krist did not in the first instance seek the services of a copyright lawyer based on *his* intuition that his rights were being violated; counsel approached him.

Even assuming Harmon told Krist he suspected Pearson was infringing his copyrights, because that alerted him to the fact that Pearson was a "bad actor in some general sense," *Graham I*, 568 F.3d at 440, a jury could find it reasonable for Krist to absorb Harmon's information and conduct his own inquiry. Krist puts forth evidence showing he did just that by gathering relevant documents and speaking to fellow photographers about their own experiences with infringement claims generally and with Harmon in particular, before ultimately retaining counsel.[3] I therefore find that there is a jury issue as to both prongs of the test: whether counsel's solicitation by itself sufficed to provide Krist with "sufficient information of possible

---

[3] In December of 2013, and less than a month after his conversation with Harmon, Krist began compiling information about the licensing and registration status of his photographs. Pl.'s Sur-Reply to Def. Mot. for Summ. J., ECF 75, at 10 (citing Pl.'s Revised Resps. to Def.'s First Set of Interrogs., ECF 59-4, at 5). In January 2014, Krist requested that Corbis send him documents substantiating the history of the images Corbis had licensed to Pearson. *Id*. (citing Krist Dep. Tr., at 24:10-25:11, 48:22-50:15, 124:18-20). Later, in April 2014, Krist and his business partner, Peggy Krist, made inquiries to photographer colleagues Tom Bean and Michael Yamashita to seek their input about Harmon and about pursuing copyright infringement claims in light of their experiences. *Id*. (citing Krist Dep. Tr., at 168:13-169:12, 255:4-21, 292:15-295:19). Later that same month, Krist entered into a representation agreement with Harmon's firm. *Id*. (citing ECF 59-4, at 5). Krist's evidence therefore demonstrates that significant issues of material fact remain and that Krist did not simply bide his time until the lawsuit was filed. Krist's evidence may also demonstrate to a jury that he did not obtain sufficient information to excite storm warnings in November 2013.

wrongdoing [to be placed] on inquiry notice or to excite storm warnings of culpable activity," *Graham I*, 568 F.3d at 438, and whether Krist acted with reasonable diligence thereafter.

Pearson argues that the discovery rule is inapplicable if a plaintiff learns enough "to assert or investigate" their claim but fails to do so for more than three years. ECF 59-1, at 16 (citing *Am. Bd. of Internal Med. v. Rushford*, 2017 WL 1024267 (D.N.J. Mar. 16, 2017)). Its reliance upon *Rushford* is misplaced. The court there granted the defendant's motion for judgment on the pleadings because the complaint on its face pled facts demonstrating the plaintiff's actual knowledge of its injury before the statute of limitations expired.[4] *Rushford*, 2017 WL 1024267, at *3.

Pearson further argues that consulting an attorney necessarily starts the clock running on the statute of limitations. ECF 59-1, at 17-18 (citing *AQC v. United States*, 656 F.3d 135 (2d Cir. 2011)). In *AQC*, the plaintiff's infant daughter suffered injuries that were obvious to the plaintiff just after the daughter's birth. 656 F.3d at 140. An early intervention counselor had already told the plaintiff she believed the daughter's injuries were the result of malpractice, and the plaintiff sought out a law firm specializing in such matters after seeing its television advertisement. *Id*. at 143. The Second Circuit held the discovery rule did not rescue the plaintiff's late-filed claim

---

[4] Significantly, the *Rushford* plaintiff had already filed a lawsuit against other alleged infringers involved in the same conduct, and it learned of the defendant's involvement while pursuing that first action. *Rushford*, 2017 WL 1024267, at *3. The plaintiff's previous lawsuit therefore provided clear evidence that it was aware of the injury that occurred when the defendants put their scheme into action. *Id*. In addition, the plaintiff did not file the action until two years after the statute of limitations expired. *Id*. at *2. The facts of *Rushford*—together with its procedural posture—differ from the situation here where the parties vigorously dispute when Krist learned enough details about the suspected infringement to trigger the statute of limitations to begin running. Further, Krist filed his lawsuit two weeks after the date Pearson alleges the statute of limitations to have expired—a far cry from filing an action two years later.

because her consultation with the attorney showed she knew enough about the cause of her daughter's injuries at that time to trigger the statute of limitations.[5]  *Id.*

Here, in contrast, Harmon approached Krist and, at that time, Harmon was the only source of information as to the possibility Krist had suffered injury.  In that regard, I would be reluctant to hold that an overture from an attorney triggers the statute as a matter of law, lest a prudent litigant be penalized for pausing to consider the merits and wisdom of filing suit.

Pearson further cites Judge Rufe's recent decision in *Krist v. Scholastic*, 2019 WL 6133861 (E.D. Pa. Nov. 18, 2019), barring many of Krist's claims on the basis of the statute of limitations, but the facts there were materially different because the relevant events took place *after* Krist and Harmon forged the relationship that gave rise to this litigation.

In refusing to enter summary judgment based on the statute of limitations, I reject Plaintiff's analysis as well.  First, Krist cites a single district court decision, *Frerck v. John Wiley & Sons, Inc., et al.*, 2014 WL 3512991, at *6 (N.D. Ill. July 14, 2014), to argue that Pearson cannot assert a statute of limitations defense without also putting forth evidence showing when the infringements of his work started and stopped.  I find no support for such a standard in any appellate decision, and I decline to adopt it here.

Krist also urges me to find that the statute of limitations does not begin to run until after a plaintiff discovers the specific facts constituting the violation, on the strength of *Pension Tr.*

---

[5] Pearson also cites a series of administrative law cases where courts have found that equitable tolling is unavailable once the plaintiff consults an attorney, even when the applicable statute of limitations is much shorter than under Copyright Act.  ECF 59-1, at 18-19.  These cases are similarly unhelpful to Pearson because they merely reinforce the point of *AQC* that plaintiffs usually seek out an attorney only after they possess sufficient knowledge of the underlying injury to do so.  *See, e.g.*, *Reifinger v. Nuclear Research Corp.*, 1992 WL 368347, at *4 (E.D. Pa. Dec. 4, 1992) ("In the case sub judice, plaintiff admits he knew of his right to bring suit against the defendant for age discrimination.  Indeed, that is why he contacted his original attorney in the first place.").  In addition, the case law developed under those statutes specifically permits tolling the limitations period until the plaintiff consults with an attorney.

*Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 276 (3d Cir. 2013). In *Pension Trust*, the Third Circuit was construing the Securities Act, and its analysis of the discovery rule was rooted in the framework of that statute, the case law that had developed in the securities context, and the peculiar facts of the case before it. 730 F.3d at 277-78. I am not persuaded that the analysis in *Pension Trust* applies with any force to the Copyright Act, particularly when the Third Circuit established a prevailing standard in *Graham I*.

In conclusion, I find that the question of when the limitation period began to run must be resolved by a jury. I also deny Pearson's request for summary judgment as to any claims that accrued before November 23, 2013 because that would have the same functional effect as granting its original request.

## 2. Alleged Abandonment of Claims

Pearson also contends that it is entitled to summary judgment on 191 of the 356 claims referenced in Krist's complaint because Krist has purportedly conceded there is no evidence to support those claims. Pearson bases this argument on the fact that Krist served supplemental disclosures during discovery that contained a "Claims Report" purporting to identify which of the claims in the Complaint he was continuing to pursue, and that Report omitted 191 of the original claims. ECF 59-1, at 22 (citing Decl. of Karl Schweitzer, ECF 59-3, at ¶ 3.)

Though hard to conceptualize, I take Pearson to argue that Krist's failure to include the 191 claims in the report and his supposed ratification of that omission means he has abandoned or waived those claims. Pearson cites no authority to support the proposition that a plaintiff's incomplete discovery submission can serve to abandon the claims asserted in that plaintiff's complaint. Moreover, a plaintiff seeking to withdraw specific claims can do so by moving to amend its pleading under Federal Rule of Civil Procedure 15, which Krist plainly has not done.

I decline Pearson's invitation to invent a doctrine of waiver or abandonment and deny its request for summary judgment on that basis.

### 3. Copyright Infringement vs. Breach of Contract

Pearson next asserts that it is entitled to summary judgment on 165 of the 168 remaining claims because those claims sound in contract, rather than copyright. Alternatively, Pearson argues it is entitled to summary judgment on those claims where it paid for an allegedly excessive use of Krist's work under the terms of the applicable Preferred Vendor Agreements (PVAs) between itself and Corbis. Neither argument is persuasive.

Krist licensed 352 of the 359 photos at issue here to Pearson through Corbis, and he licensed the remaining seven photos to Pearson directly. *See* Krist Dep. Tr., at 14:7-15:9. The parties disagree about the scope of the license Corbis conveyed to Pearson. Pearson asserts that the series of PVAs between itself and Corbis constituted master licensing agreements that allowed it to use Krist's photographs in any way it chose so long as it was willing to pay the price for that use set forth in the applicable PVA. Krist counters the use of each photo was governed by separate invoice and licensing agreements, each of which incorporated a separate set of terms and conditions. Accordingly, Krist argues, any use that exceeded the scope of the license set forth in those documents constituted copyright infringement.

In Pearson's view, Krist's contention that it exceeded the scope of its licenses with Corbis sounds in contract, rather than copyright, because Pearson's allegedly infringing uses of the photos violated covenants, rather than conditions, of the licenses. In support of this view, Pearson directs me to the Second Circuit's decision in *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998), for the proposition that "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." Under

*Graham*, Pearson contends, disputes over a licensee's alleged acts exceeding the scope of the license are governed by a covenant-condition distinction.

Pearson embraces *Graham* in support of an elaborate argument that Krist has no potential remedies. Pearson concedes that Krist is not a party to any of the agreements between itself and Corbis. ECF 59-1, at 26. In denying an earlier motion to transfer, I have already found that Krist is not a party to those agreements. *Krist v. Pearson Educ., Inc.*, 263 F. Supp. 3d. 509, 511-14 (E.D. Pa. 2017) (McHugh, J.) (holding as a nonparty Krist cannot be bound by the forum selection clause contained in agreements between Corbis and Pearson). By Pearson's logic, Krist has no recourse: he cannot assert a copyright infringement claim because the agreements between Pearson and Corbis authorized use, and he cannot assert a breach of contract claim because he is neither a party to nor a third-party beneficiary of those same agreements.

I see no basis to apply the covenant-condition distinction here because, as Pearson concedes in its briefing, the Third Circuit has never addressed, let alone adopted, the covenant-condition framework. ECF 59-1, at 24. Reduced to its essence, *Graham* involved a dispute between a licensor and licensee over the failure to pay royalties, not a dispute about the use of protected works outside the scope of the license. *See* 144 F.3d at 236 (rejecting plaintiff's arguments that the failure to pay royalties breached license conditions and voided the license, and that breaches terminated agreement). In practical terms, *Graham* was a collection action.

In fact, panels of the Second Circuit both before and after *Graham* have evaluated infringement claims turning on the scope of a license without applying the covenant-condition framework. *See, e.g.*, *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019); *Spinelli v. NFL*, 903 F.3d 185, 203 (2d Cir. 2018); *Marshall v. New Kids On The Block P'ship*, 780 F. Supp. 1005, 1008-09 (2d Cir. 1991); *Kamakazi Music Corp. v. Robbins*

*Music Corp.*, 684 F.2d 228, 230 (2d Cir. 1982). One later panel specifically distinguished *Graham*, noting that the rule there "holds true only where the defendant licensee 'uses the copyright as agreed with the licensor.'" *Spinelli*, 903 F.3d at 202 (citing *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007)) (noting the separation between the questions of "whether AP simply violated a contractual promise to pay royalties (a claim for breach of contract) or whether its complimentary license to NFL exceeded the scope of its sublicensing authority (a claim for copyright infringement)."); *see also Marshall*, 780 F. Supp. at 1008 (observing that a licensee who fails to use the work as agreed "effectively makes himself a 'stranger' to the copyright owner [and] the action arises under the copyright laws just as if the claim were against any other infringer who is a stranger to the plaintiff").

The Federal Circuit provides a sensible framework for determining when a claim arises under the Copyright Act. In *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307 (Fed. Cir. 2005), the Federal Circuit held that courts should look to the nature of the right injured by the defendant's conduct to determine the appropriate remedy.[6] Under the Federal Circuit's approach, for an infringement claim to be actionable, the copyright owner must show that the defendant exceeded the scope of the license and "the source of the copyright owner's complaint must be grounded in a right protected by the Copyright Act, such as unlawful

---

[6] The Federal Circuit uses an unusual but effective illustration to crystalize the distinction between copyright and contract claims where a licensee exceeds the scope of the license:

> As an example, consider a license in which the copyright owner grants a person the right to make one and only one copy of a book with the caveat that the licensee may not read the last ten pages. Obviously, a licensee who made a hundred copies of the book would be liable for copyright infringement because the copying would violate the Copyright Act's prohibition on reproduction and would exceed the scope of the license. Alternatively, if the licensee made a single copy of the book, but read the last ten pages, the only cause of action would be for breach of contract, because reading a work does not violate any right protected by copyright law.

*Storage Tech.*, 421 F.3d at 1316.

reproduction or distribution." [7] *Storage Tech*, 421 F.3d at 1316 (citing 17 U.S.C. § 106). Stated differently, "[u]ses that violate a license agreement constitute copyright infringement only when those uses would infringe in the absence of any license agreement at all." *Id*. Courts evaluating whether the Act applies should therefore ask whether the defendant's actions would constitute copyright infringement if the defendant committed the same act in the absence of a licensing agreement. If the answer is yes, copyright law is the proper vehicle for the plaintiff's claim.

*Graham's* utility is further limited by the Second Circuit's conclusion that the Copyright Act *preempts* breach of contract claims for conduct injuring a plaintiff's exercise of the exclusive rights conferred by the Act. *Universal Instruments*, 924 F.3d at 48. Thus, a breach of contract claim for conduct exceeding the scope of a license would be preempted unless it contains an extra element—such as a promise to pay. *Id*. Pearson urges me to characterize the essence of Krist's claim as Pearson's failure to pay invoices governing the use of particular photos. I disagree and find instead that Krist's claim asserts unlicensed uses of his work violating his rights as a copyright holder.

Pearson alternatively requests summary judgment for any uses where it tendered payments to Corbis under the PVAs sufficient to cover any alleged infringement. Pearson argues that the PVAs allow it to make essentially unlimited use of any photographs so long as it pays the price required by the agreement for the way in which it uses each one. ECF 59-1, at 31-35. Krist disagrees, contending that the PVAs do nothing more than set the pricing terms for licenses that Pearson will request from Corbis in the future. ECF 65, at 20.

---

[7] In *Universal Instruments*, the Second Circuit articulated a similar formulation. 924 F.3d at 48. There, the court concluded "[t]he Copyright Act exclusively governs a claim when (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Id*.

Neither party is convincing as to how the PVAs operate in the context of this dispute. Pearson and Corbis have enjoyed a business relationship since at least 1997 during which they entered a series of PVAs—in 2001, 2004, and 2007—which Pearson contends are "master licensing agreements that governed Pearson's use of images obtained from Corbis." Decl. of Elaine Soares-Ferreira, ECF 59-20, ¶ 6. Importantly, each PVA attaches and incorporates a set of terms and conditions that set forth particular limits on Pearson's uses of the photographs it obtains from Corbis, which would certainly support a conclusion that use beyond authorized limits constitutes copyright infringement. *See, e.g.*, Ex. A to Decl. of Elaine Soares-Ferreira, ECF 59-21, at 3. Although the PVAs provide a schedule of prices tied to certain levels of usage, the language of the agreements is insufficient to show, as a matter of law, that they permit the kind of unlimited, pay-as-you-go usage that Pearson claims they do. In fact, to the extent they clearly require anything, it is that Pearson request and license a certain dollar amount worth of images and services from Corbis in exchange for favorable pricing on those transactions. *See, e.g.*, Ex. A to Decl. of Elaine Soares-Ferreira, ECF 59-21, at 3. Moreover, the presence of the terms and conditions attached to the PVAs as well as the license terms incorporated into each invoice cast further doubt on Pearson's position.

In support of its position, Pearson cites to a recent district court decision, *Pelaez v. Pearson Education*, 2019 WL 6211261 (D.N.J. Nov. 21, 2019), holding that the PVAs unambiguously gave Pearson licenses to use Corbis photos without prior authorization so long as they paid the requisite fee. I do not find similar clarity on the record before me.

As the moving party Pearson bears the burden of showing the absence of any disputed issue of fact and an entitlement to judgment as a matter of law. It has not succeeded in doing so.

### 4. *Validity of Copyright Registrations*

Pearson contends that it is entitled to summary judgment on 21 claims as to which the underlying registrations are facially defective because they (1) fail to specify that Krist is an author; and (2) fail to identify the title of the photos being submitted. The undisputed facts show that Krist entered an agreement with Corbis in which he agreed to assign to Corbis his copyright in the photos for the express purpose of having Corbis register them, after which Corbis would assign the rights back to Krist. *See* Krist Decl. to Pl. Mot. for Summ. J., ECF 57, at ¶ 5; 001896. When Corbis registered the photos, it listed itself as the author without also providing Krist's name, and it failed to provide titles for each photo. *See* Def. Ex. 16 to Decl. of Karl Schweitzer, ECF 59-19.

Pearson now challenges the 21 photos here on the basis that Corbis's failure to provide titles for each photo and failure to note Krist as an author invalidates the registrations. If Pearson is correct that the registrations are defective, then Krist is barred from bringing an action for infringement of those photos.

Copyright protection in a work vests in the author or authors of a work as soon as the work is fixed in a tangible medium of expression. *See* 17 U.S.C. §§ 102, 201. The Copyright Act confers certain exclusive rights upon the owner of protected works, including the rights to copy or distribute them. *Id*. at § 106.

When one of the exclusive rights is violated, a copyright owner generally may not sue for infringement without first registering the work with the Copyright Office.[8] *Id*. at § 411(a); *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com,* LLC, 139 S. Ct. 881, 886 (2019). Section

---

[8] The Copyright Act carves out an exception to the registration requirement for works that are likely to be infringed prepublication. 17 U.S.C. §§ 408(f); 411(a). The same is true of live broadcasts, given their ability to be infringed as soon as they are published. *Id.* at § 411(c).

409 of the Copyright Act governs what information must be present on an application for registration in order for a registration to be valid. As relevant here, an applicant must supply the "the name and nationality or domicile of the author or authors," 17 U.S.C. § 409(2), and "the title of the work, together with any previous or alternative titles under which the work can be identified." 17 U.S.C. § 409(6).

The Copyright Act protects several different categories of works, including "compilations," which are "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id*. at § 101. Compilations include "collective works" as a subset, which the Copyright Act defines as "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." *Id*. Although the Copyright Act's default presumption is that the author of a collective work does not own the copyright to that work's constituent parts, the language of § 201(c) makes clear that the presumption gives way when the "the author of a collective work has obtained the express transfer of the copyrights in each separate contribution to that collective work." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 596 (4th Cir. 2013).

Registering a large group of photographs presents a significant administrative challenge because strict adherence to Section 409 would require a registrant to supply potentially hundreds of authors' names and titles. To ease that burden, the Register of Copyrights worked in concert with participants in the stock photograph industry to craft regulations and guidance allowing stock agencies to "register both a catalog of images and the individual photographs in the catalog in one application if the photographers temporarily transferred their copyrights to the stock

agency for the purposes of registration." *Alaska Stock, LLC v. Houghton Mifflin Harcourt Pub. Co.*, 747 F.3d 673, 676 (9th Cir. 2014). The Register made clear that although the Copyright Office preferred registrants to name all of the authors, it required them to list only three authors of the individual works by name and indicate the number of additional authors who contributed works to the compilation. *Id*. at 677.

Without explicit statutory guidance for this practice, courts have come to opposite conclusions about the validity of group registration following the Register's more relaxed procedure. Pearson relies upon two district court decisions finding that group registrations following this procedure are invalid and therefore bar the plaintiff from filing an infringement suit. ECF 59-1, at 35 (citing *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, 712 F. Supp. 2d 84, 95 (S.D.N.Y. 2010); *Muench Photography, Inc. v. John Wiley & Sons, Inc.*, 2013 WL 4010273, at *3 (S.D.N.Y. Aug. 6, 2013)). These decisions carry little weight in the face of numerous cases finding that the group registration process also validly registers each individual photo. Although the Third Circuit has not expressly addressed the issue, it has observed that "decisions of this Court and others counsel that registration of a collective work is sufficient to support an action for infringement of the underlying self-contained parts." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 206 n.2 (3d Cir. 2005).

Among those decisions is *Alaska Stock*, where the Ninth Circuit held that that registration of a collective work also registers the component works contained within it, provided that the registrant owns the copyright to the component works. 747 F.3d at 685. Several factors supported the court's conclusion: (1) the text of the statute requires the registrant to list the author and title of the collective work,[9] not its component parts; (2) the

---

[9] I note that my colleague, Judge Beetlestone, also relied upon *Alaska Stock* to reject a similar challenge to the validity of photographs registered as a group that were later the subject of an infringement action. *See Kashi v.*

Copyright Office's practice with respect to the registration form flowed from a reasonable reading of the statute and complied with its requirements; (3) it would be administratively difficult to list all authors on the registration form; (4) the administrative interpretation of the statute was entitled to deference; and (5) other circuit courts reached the same conclusion. *Id*.

Pearson contends that even if I am persuaded by *Alaska Stock* and similar cases, the Supreme Court's decision in *Fourth Estate Pub. Benefit Corp. v. Wall Street, LLC*, 139 S. Ct. 881, 886 (2019) compels a different result. Although it is somewhat opaque, Pearson's argument seems to be that the Supreme Court's holding in *Fourth Estate* forecloses any actor but Congress from changing the statutory requirements for registration. Pearson reads *Fourth Estate* too broadly. *Fourth Estate* addressed a circuit split over the much narrower issue of whether registration occurs when the application is submitted or when the Register finally approves it. The Supreme Court resolved that split in favor of courts holding that registration is effective once granted, and it also held that a claimant may recover for pre- and post-registration infringement once registration obtains. *Id*. at 886-87. *Fourth Estate* is of no benefit to Pearson here because Pearson does not challenge whether the Register of Copyrights granted registrations in the first instance; rather, it challenges the scope and effect of the registration that was granted.[10]

---

*McGraw-Hill Glob. Educ. Holdings*, 2018 WL 5262733 (E.D. Pa. Oct. 23, 2018). In *Kashi*, Judge Beetlestone concluded that:

> the Act defines a "collective work" as a "work." Thus, nothing in the text requires a group registrant to list the names of each individual author or the title of each individual work; rather, the "'title of the work' refers to the collective work" and the "'author or authors' that must be listed . . . are the author or authors of the collective work."

*Id*. at *8 (citing *Alaska Stock*, 747 F.3d at 680-81).

[10] Krist is equally misguided in arguing that Pearson did not follow the proper procedure under Section 411(b) to challenge the validity of the registrations. ECF 65, at 22-24. The decision Krist cites for this proposition was construing an amendment to Section 411(b) that added "a new procedure for courts confronted with a registration allegedly obtained by knowing misstatements in an application." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734

Because I am satisfied that the 21 photos challenged by Pearson are validly registered, I deny summary judgment to Pearson on this issue.

## B. Krist's Motion for Partial Summary Judgment

Plaintiff has cross-moved for partial summary judgment as to three issues. First, Krist asserts that he is entitled to judgment as a matter of law as to 40 of the 359 instances of alleged copyright infringement claim because he has produced undisputed evidence as to both his ownership of a valid copyright in the 40 photographs and Pearson's unauthorized reproduction of them. Second, Krist seeks an entry of judgment against Pearson as to six of the affirmative defenses Pearson raised in its Answer. Finally, Krist seeks an entry of judgment that Pearson's infringement of his copyrights was willful within the meaning of the Copyright Act.

### 1. Copyright Infringement

Krist seeks summary judgment on the merits of his copyright claim as to 40 of the 359 photographs. To be entitled to summary judgment on that claim, Krist must prove: (1) his ownership of a valid copyright in the 40 photographs at issue, and (2) that Pearson copied those photographs. *Feist*, 499 U.S. at 361. For the reasons below, I conclude that Krist is not entitled to summary judgment here because he has failed to produce sufficient evidence of Pearson's copying.

Pearson does not dispute that Krist took the photographs, and given my ruling on group registration, Krist has provided evidence that each of the photographs at issue were properly

---

F.3d 616, 623 (7th Cir. 2013). I do not understand Pearson to be arguing that the Corbis group registrations contained "knowing misstatements" or seeking the invalidation of those registrations on that basis. Rather, Pearson is challenging the sufficiency of the group registrations to register the individual photos contained within the collections. ECF 59-1, at 35-36.

registered with the Copyright Office. There is therefore no disputed issue of material fact regarding Krist's ownership of valid copyrights in the 40 photographs.

Krist does not fare as well with the second element of the analysis. Krist asserts that he has provided undisputed evidence of Pearson's copying because Pearson's own documents show that Pearson either exceeded the scope of the applicable licenses or used Krist's works without obtaining a license in the first instance. In support, Krist cites to the declaration of Mariel Murphy and its accompanying exhibits, one of which is a "Claims Summary" that includes a thumbnail of each disputed photograph and purports to provide evidence about the way in which Pearson misused each one. Decl. of Mariel Murphy, ECF 58, ¶¶ 6-7; Ex. 1 to Decl. of Mariel Murphy. Each entry describes the way Pearson allegedly misused the photograph, which includes exceeding the agreed-upon print runs, distributing beyond geographic limits, and using the relevant photograph after expiration of a license. *Id.* The summary also cross-references Pearson documents ostensibly showing the myriad publications in which each photograph was used. *Id.*

As Pearson correctly notes, Krist's use of the Claims Summary to establish Pearson's copying has several flaws. First, the reports produced by Pearson on which the summary relies do not reflect the print or distribution information for Krist's photographs. In producing the reports, Pearson included an express disclaimer—affixed at the bottom of each page—that their inclusion did not represent any admission that Krist's photographs in fact appeared in the relevant publication. Def.'s Opp'n. to Pl.'s Partial Mot. for Summ. J., ECF 66, at 37-38. Consequently, Krist has failed to provide specific evidence establishing the presence of any of the photographs here in any of the publications referenced in the Pearson reports.

Second, Pearson points to serious deficiencies in the methodology by which Krist attempts to establish that Pearson exceeded the print runs or other limitations on its use of the images. ECF 66, at 38-39, 41-44. Specifically, with respect to allegations that Pearson exceeded the print runs, Pearson challenges the sufficiency of Krist's evidence that his photographs were used in the publications at issue. Pearson also asserts that the totals do not account for photographs that may have been removed from specific publications and that Krist combined data from different reports in a way that is not representative of Pearson's actual printing of textbooks. Furthermore, Pearson contends, Krist similarly provides insufficient evidence that Pearson exceeded other limitations on its use of Krist's photographs and asserts that the summary chart contains inaccurate and incomplete information with respect to those allegations.

Third, in keeping with its contention that the PVAs governed the use of each photo, Pearson contends that any payments satisfying the terms of the PVA for its uses of the photos cover the allegedly infringing uses. Obviously, the parties dispute whether that is the case, but the presence of a genuine dispute about which agreements governed the use of individual photos makes summary judgment inappropriate.

As with Pearson, Krist bears the burden as the moving party, and like Pearson, it has failed to demonstrate that there is no disputed issue of fact and that it is entitled to judgment as a matter of law.

Because I decline to enter judgment as a matter of law on Krist's infringement claim, I need not address the question of whether the alleged infringement was willful and deny summary judgment on that basis as well.

*2. Pearson's Affirmative Defenses*

Krist also seeks summary judgment on several of Pearson's affirmative defenses. As to the statute of limitations, there are issues for the jury. As to the validity of the Corbis group registrations, I have held that the registrations are valid. Krist's other challenges to affirmative defenses are more appropriately considered closer to trial.

**III.    CONCLUSION**

For the reasons set forth above, the parties' cross-motions will be **DENIED**. An appropriate order follows.

___/s/ Gerald Austin McHugh_____
United States District Judge
